DAN RAYFIELD
Attorney General
NATALIE M. FISHER #223995
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: natalie.fisher@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL SCOTT TUGMAN,

Plaintiff,

v.

TINA KOTEK, Governor, State of Oregon; NICOLE TOWNSEND, Executive Clemency Coordinator for Governor Kotek; GRETA LOWRY, former Chairperson, Board of Parole & Post-Prison Supervision, (BOARD); JOHN D. BAILEY, Chairperson, BOARD; DYLAN ARTHUR, Executive Director BOARD; KIM COONS, Hearing Specialist, BOARD; and JOHN & JANE DOES 1-10, state actors employed by the Governor's Office, Board & Post-Prison Supervision (Board), and/or ODOC, or other state actors who were personally involved in the violations alleged herein but whose identities are presently unknown to Plaintiff; all sued in the individual and personal capacities.,

Defendants.

Case No. 2:26-cv-01920-HL

MOTION TO STAY PROCEEDINGS

## RULE 7-1 CERTIFICATION

In compliance with Local Rule 7-1, counsel for Defendants Tina Kotek, Nicole Townsend, Greta Lowry, John D. Bailey, and Dylan Arthur ("State Defendants") certifies that the parties made a good faith effort to resolve the dispute by phone but were unable to do so without the assistance of this Court.

## MOTION

State Defendants respectfully move this Court for an order staying this action pursuant to the *Pullman* abstention doctrine. In so doing, State Defendants request that this Court take judicial notice of *Tugman v. Kotek, et al.*, Baker County Case No. 24CV45115 and the related appeal in Court of Appeals Case No. A185753. Attached to this Motion as Attachment 1 and Attachment 2 are the Opening Brief and Answering Brief, respectively, in Case No. A185753.

Accordingly, under the *Pullman* abstention doctrine, this Court should defer its proceedings until the Oregon appellate courts have had a reasonable opportunity to address the novel state constitutional question.

## FACTUAL BACKGROUND

On March 29, 2021, Governor Kate Brown granted a conditional and revocable commutation to Plaintiff and twelve other prisoners. (Compl. ¶ 23). This took effect on April 1, 2021. (*Id.*). On March 12, 2024, Plaintiff's Conditional and Revocable Commutation of Sentence was revoked. (Compl., Ex. 9). On September 17, 2024, Plaintiff filed a habeas corpus petition in Baker County Circuit Court Case No. 24CV45115. (Compl. ¶ 89). The trial court granted Plaintiff's petition on October 1, 2024, releasing Plaintiff immediately from prison and finding that:

> [P]laintiff's sentence was increased in violation of the separation of powers provision of the Oregon Constitution; that plaintiff should have received credit for the 44-day post-prison supervision sanction he served prior to the revocation of his commutation; and that plaintiff was deprived of the due process to which he was entitled under the 14th Amendment to the United States Constitution.





Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

*Tugman v. Kotek, et al.*, General Judgment, Habeas Corpus, 24CV45115 A185753 (Oct. 1, 2024); (Compl., Ex. 16).

The State appealed the trial court's ruling on October 22, 2024. On April 23, 2026, the Oregon Court of Appeals heard oral argument on *Tugman* as well as a related matter *Beck v. Kotek et al.*, Court of Appeals Case No. A185752.[1] On April 23, 2026, the Court of Appeals took both matters under advisement. The questions presented before the Oregon Court of Appeals include whether the Governor's revocation of Plaintiff's commutation was unconstitutional, whether Plaintiff should have received 44-day credit for time served, and whether Plaintiff's due process rights were violated by the revocation.

On September 15, 2026, Plaintiff filed his complaint before this Court. In his complaint, Plaintiff raises 10 claims for relief, all of which allege as a premise a version of the allegation that State Defendants colluded "to illegally arrest and incarcerate Plaintiff for 113 days . . . from June 10, 2024[,] to October 1, 2024[.]" (Compl. ¶¶ 103-122). The date, October 1, 2024, is the same day the Baker County Circuit Court entered the habeas corpus judgment that is presently on appeal. Plaintiff also seeks declaratory relief in the form of 13 separate judicial declarations, all of which request this Court to declare that Plaintiff's term of incarceration resulting from the Governor's revocation of his communication was illegal. (Compl. at 40-44).

## ARGUMENT

### I. This Court should abstain or defer from addressing this matter until the state court has fully resolved or substantially narrowed the underlying disputes.

"[F]ederal courts have the power to refrain from hearing cases when the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law." *Am. Encore v. Fontes*, 152 F.4th 1097, 1122 (9th Cir. 2025) (citing *Peridot Tree, Inc. v. City of Sacramento*, 94 F.4th 916, 926 (9th Cir. 2024). *Pullman* is an

[1] Also pending in the District Court for the District of Oregon is *Beck v. Kotek, et al.*, 3:26-cv-01919-SB, in which State Defendants are filing a similar Motion to Stay.



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

"extraordinary and narrow exception to the duty of a . . . court to adjudicate a controversy." *Id.* (citing *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 528 (9th Cir. 2015).

*Pullman* defers to state court interpretations of state law to avoid "'premature constitutional adjudication'" that would arise from "interpreting state law without the benefit of an authoritative construction by state courts." *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 888 (9th Cir. 2011) (quoting *Gilbertson v. Albright*, 381 F.3d 965, 976–78 (9th Cir. 2004)). A district court has the authority to exercise its discretion to abstain under *Pullman* if three requirements are met:

> (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain.

*Am. Encore*, 152 F.4th at 1122 (citing *Courthouse News Serv. v. Planet*, 750 F.3d 776, 783–84 (9th Cir. 2014). Under this test, the *Pullman* doctrine balances the "rightful independence" of state governments with the prevention of a potential premature determination of constitutional questions. *Id.* Federal courts are particularly hesitant to abstain in 42 U.S.C. § 1983 matters. *See Toussaint v. Yockey*, 722 F.2d 1490, 1495 (9th Cir. 1984) (declining to abstain in § 1983 matter where the case did not include unusual state statutes that the state court had not previously construed); *See also Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 528 (9th Cir. 2015) (explaining that abstention generally is inappropriate in First Amendment cases).

Even so, the three *Pullman* abstention requirements weigh in favor of this Court abstaining in the present case: (1) the constitutionality of the Governor's execution of her clemency power is a sensitive area of social policy that should be left to the states; (2) the need



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

for constitutional adjudication can be obviated by a ruling from the state appellate courts; and (3) this area of state law is novel and unsettled.

**A. The clemency power is a sensitive area of social policy in Oregon state law that warrants abstention.**

The constitutionality of the Governor's exercise of the clemency power under the Oregon Constitution is sensitive area of social policy warranting abstention. Whether a matter touches on a sensitive area of social policy is highly contextual. *See Pearl Inv. Co. v. City & Cnty. of San Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985).

Generally, clemency at the state level is an executory power that federal courts approach with "great caution and deference." *Woratzeck v. Arizona Bd. of Exec. Clemency*, 117 F.3d 400, 404 (9th Cir. 1997). The Supreme Court has consistently hesitated from encroaching on a state executive branch's clemency power. *See, e.g.*, *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280 (1998) ("[P]ardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review.") (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981)); *see also*, *Cavazos v. Smith*, 565 U.S. 1, 9 (2011) ("If the clemency power is exercised in either too generous or too stingy a way, that calls for political correctives, not judicial intervention.").

The act of clemency at issue here—the Conditional and Revocable Commutation provided to and arguably accepted by Plaintiff when he left prison—was part of Governor Kate Brown's statewide effort to reduce the spread and exposure of COVID-19 among Oregonians and incarcerated people. *See* Mark Cebert & Aliza B. Kaplan, Governor Kate Brown of Oregon's Historic Use of Clemency: *Using Clemency Exactly As It Was Intended*, 28 LEWIS & CLARK L. REV. 521, 570 (2024). Now, the constitutionality of Governor Tina Kotek's revocation of Plaintiff's Conditional Commutation is a question pending before the Oregon Court of Appeals.





Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

This Court should abstain from this matter so that the Oregon appellate courts can address the constitutionality of the governor's clemency power, which is a matter of sensitive social policy.

**B. Federal constitutional adjudication can be avoided or substantially limited if this Court abstains to allow the Oregon appellate courts to reach a definite ruling on the state issues.**

Under the second *Pullman* requirement, a definitive ruling on the underlying state issue would terminate the controversy when the issue could be adjudicated in a single state court proceeding that would resolve the issues presented in federal court. *Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir. 1987). It is sufficient if the answers to the relevant state-law questions may "reduce the contours" of the federal litigation." *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1150 (9th Cir. 2022).

In *Smelt v. County of Orange*, abstention was appropriate in part because a resolution of the state cases by state courts could have substantially changed the federal constitutional challenges. 447 F.3d 673, 681–82 (9th Cir. 2006). In *Smelt*, there were numerous ongoing cases in state court that would address the constitutionality of a state statute prohibiting same-sex marriage. *Id.* at 677. The state court adjudication on state constitutionality issues "may not only narrow, but even eliminate, any need for federal constitutional adjudication" on the challenges arising from state law. *Id.* at 681. Similarly, in *Almodovar*, the federal case would have been resolved by a ruling in an unrelated pending state court case. 832 F.2d 1138, 1140. "All of plaintiff's constitutional claims would be moot" if the state supreme court decided that the anti-obscenity statutes at the heart of the dispute did not apply in the context of "making films of sexual activity." *Id.* at 1138–41.

The present matter will be substantially narrowed by the Oregon appellate courts answering the questions of whether the Governor's use of the clemency power was unconstitutional and whether Plaintiff's due process rights were violated. Moreover, unlike in *Smelt* and *Almodovar*, the case before the Court of Appeals is not unrelated, but the direct appeal



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

from the habeas corpus judgment upon which Plaintiff bases his claims for relief. On appeal are the habeas court's ruling that the commutation revocation violated the separation of powers provision of the Oregon Constitution, that Plaintiff was entitled to time served credit for the post-prison supervision sanction he served, and that Plaintiff was deprived of the due process to which he was entitled under the 14th Amendment to the U.S. Constitution. Thus, Plaintiff's claims for relief, including requests for declaratory relief, stemming directly from the habeas judgment on appeal will be substantially narrowed regardless of the outcome from the Oregon appellate courts.

### C. This Court should abstain under Pullman because the governor's clemency power in post-prison supervision revocation cases is unresolved.

"An issue of state law is 'uncertain' if 'a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law.'" *Peridot Tree*, 94 F.4th at 929 (internal citations omitted); *see also*, *Smelt*, 447 F.3d at 681. In *Smelt*, the state court was presented with a challenge to a state statute which banned same-sex marriage, "which it [had] not yet passed upon." *Id.* Similarly, in *Almodovar*, the issue of whether the anti-obscenity statute should be construed to include filmmakers "[had] not been construed authoritatively." 832 F.2d at 1141. In contrast, in *Peridot Tree*, where the dispute was about a challenge to a permit that was denied because of residency requirements, the state court did not hold that the "residency requirement [was] particularly ambiguous" and "all parties agree[d] that the residency requirement [meant] exactly what it [said]." 94 F.4th at 929.

The underlying state law question before this Court is a question of first impression that has yet to be decided by the Oregon appellate courts, and this Court should abstain to allow the proceedings in the Oregon Court of Appeals to resolve. The question of whether the Governor's revocation of a conditional commutation and reinstatement of an offender's full prison sentence violated the Oregon constitution if the offender has already served more time on post-prison supervision than the post-prison supervision terms provided for in the criminal judgment is a



Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

question of first impression for the Oregon Supreme Court. Like in *Smelt*, the Oregon courts have not yet answered this question.

The Oregon Supreme Court recently addressed the Governor's power to revoke conditional commutations in *Brown v. Kotek*, 372 Or. 260, 271 (2024). Like in *Almodovar*, the *Brown v. Kotek* court left the issue unresolved and the broader question of the constitutionality of revoking a conditional commutation has not been ruled upon by Oregon's appellate courts. *See id.* ("The parties' dispute before this court has focused on whether the state and federal constitutions permit the Governor to revoke a commutation following the expiration of a sentence. That is a difficult question of first impression in Oregon . . . But we need not resolve that question today[.]"). As such, it is unclear how the Oregon appellate courts will rule on this state constitutional issue currently pending before the Court of Appeals, and this Court cannot predict this answer with any certainty.

## CONCLUSION

This Court should impose the *Pullman* abstention doctrine in this case and stay the matter until the Oregon appellate courts have had the reasonable opportunity to address the novel state constitutional challenges to the Governor's clemency power and substantially narrowing the issues before this Court.

DATED November 23, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General

*s/ Natalie M. Fisher*

NATALIE M. FISHER #223995
Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4791
natalie.fisher@doj.oregon.gov
Of Attorneys for Defendants

IN THE COURT OF APPEALS OF THE STATE OF OREGON

Michael Scott Tugman,

Plaintiff-Respondent,

v.

Tina Kotek, Governor of the State of Oregon, and Tom McLay, Superintendent, Powder River Correctional Facility,

Defendants-Appellants.

Baker County Circuit Court
No. 24CV45115

CA A185753

APPELLANTS' OPENING BRIEF

Appeal from the Judgment of the Circuit Court for Baker County
Honorable CHERYL A. PELLEGRINI, Judge

BRITTNEY R. PLESSER #154030
Oregon Justice Resource Center
618 NW Glisan St
Portland, Oregon 97209
Telephone: (503) 278-5800
Email: bplesser@ojrc.info

Attorney for Plaintiff-Respondent

DAN RAYFIELD #064790
Attorney General
BENJAMIN GUTMAN #160599
Interim Deputy Attorney General
KIRSTEN M. NAITO #114684
Assistant Attorney General
1162 Court St NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402
Email:
kirsten.m.naito@doj.oregon.gov

Attorneys for Defendants-Appellants

## TABLE OF CONTENTS

STATEMENT OF THE CASE ..... 1
Nature of the Proceeding ..... 1
Nature of the Order and Judgment Sought to Be Reviewed ..... 1
Statutory Basis of Appellate Jurisdiction ..... 1
Perfection of Appeal ..... 2
Questions Presented ..... 2
Summary of Argument ..... 3
Statement of Facts ..... 4
ASSIGNMENT OF ERROR ..... 7
The trial court erred by granting plaintiff's petition for *habeas corpus* relief. ..... 7
A. Preservation of Error ..... 7
B. Standard of Review ..... 8
ARGUMENT ..... 8
A. The Governor validly exercised her authority to revoke plaintiff's conditional commutation. ..... 9
B. Any procedural due process violation was harmless. ..... 13
C. ORS 137.370(2) precludes DOC from applying the custody time that plaintiff served as a sanction to his later-served prison term. ..... 17
CONCLUSION ..... 20
EXCERPT OF RECORD

## TABLE OF AUTHORITIES

### Cases Cited

*Arthur v. Craig*,
48 Iowa 264 (1878) ..... 10
*Bd. of Pardons v. Allen*,
482 US 369, 107 S Ct 2415, 96 L Ed 2d 303 (1987) ..... 14

*Ex Parte Dormitzer*,
119 Or 336, 249 P 639 (1926) ....................10

*Ex Parte Houghton*,
49 Or 232, 89 P 801 (1907) .................... 8, 10, 12, 13

*In re Bush*,
164 Wash 2d 687, 193 P3d 103 (Wash 2008) ....................14

*Macomber v. Alexander*,
197 Or 685, 255 P2d 164 (1953) ....................2

*Marteeny v. Brown*,
321 Or App 250, 517 P3d 343,
*rev den*, 370 Or 303 (2022) ....................10

*Ohio Adult Parole Auth. v. Woodard*,
523 US 272, 118 S Ct 1244, 140 L Ed 2d 387 (1998) ....................14

*Schick v. Reed*,
419 US 256, 95 S Ct 379, 42 L Ed 2d 430 (1974) ....................10

*State ex rel Torres-Lopez v. Fahrion*,
373 Or 816, __ P3d __ (2025) ....................19

*Thompson v. Fhuere*,
372 Or 81, 545 P3d 1233 (2024) ....................9

## Constitutional & Statutory Provisions

Or Const, Art III, § 1 ....................9

Or Const, Art V, § 14 .................... 4, 8, 9, 12

ORS 137.370 .................... 18, 19

ORS 137.370(2) ....................17

ORS 137.370(4) ....................19

ORS 137.372 ....................18

ORS 161.085 ....................18

ORS 161.505 ....................18

ORS 161.515 ....................18

ORS 19.205 ....................2

ORS 19.255(1) ....................2

ORS 34.310 .......... 1
ORS 34.710 .......... 1

## Administrative Rules

OAR 255-005-0005(34) .......... 5
OAR 291-100-0130 .......... 12

# APPELLANTS' OPENING BRIEF

## STATEMENT OF THE CASE

### Nature of the Proceeding

This is a *habeas corpus* proceeding pursuant to ORS 34.310. In 2021, while plaintiff was serving a prison sentence, the Governor granted him a "Conditional and Revocable Commutation" that commuted his remaining prison term to post-prison supervision (PPS), so long as he obeyed all laws during that period of supervision. In 2024, after he pleaded guilty to a new crime, the Governor revoked the commutation, and plaintiff was returned to prison. Plaintiff then initiated this *habeas* proceeding, alleging that the Governor's order revoking the commutation violated his state and federal constitutional rights and that his imprisonment was therefore unlawful.

### Nature of the Order and Judgment Sought to Be Reviewed

The trial court entered a judgment granting plaintiff's petition for a writ of habeas corpus. (ER 25). It directed that plaintiff be discharged from his sentence and released from custody immediately. The state seeks reversal of that judgment.

### Statutory Basis of Appellate Jurisdiction

This court has appellate jurisdiction over the state's appeal of a judgment issued in a habeas corpus proceeding pursuant to ORS 34.710 (providing that any party may appeal from a judgment "in like manner and with like effect as in

an action") and ORS 19.205 (providing for an appeal of a general judgment). *See also Macomber v. Alexander*, 197 Or 685, 691–95, 255 P2d 164 (1953) (discussing Oregon's statutory scheme authorizing appeals from grants of *habeas corpus*).

**Perfection of Appeal**

The trial court entered an order issuing a *habeas corpus* writ on October 1, 2024. The state filed a notice of appeal on October 22. On November 1, 2024, the trial court entered a judgment. (ER 21–23). On December 30, 2024, this court notified the parties that the filing of the notice of appeal had terminated the trial court's jurisdiction to enter that judgment but gave leave for the trial court to reenter the judgment. On January 13, 2025, the trial court entered an amended judgment (ER 25–26), and the state timely filed an amended notice of appeal from that judgment on January 14, 2025. *See* ORS 19.255(1) ("a notice of appeal must be served and filed within 30 days" after a judgment is entered).

**Questions Presented**

1. Whether the Governor's revocation of a conditional commutation and reinstatement of an offender's full prison sentence violates Article III, section 1, of the Oregon Constitution if it results in the offender serving more time on PPS than the PPS term provided for in the criminal judgment.

2. Assuming that a commutation recipient is entitled to procedural

due process before a conditional commutation is revoked, whether a violation of that right is harmless where the recipient pleaded guilty to a new crime.

3. Whether an offender's term of imprisonment includes time for which the offender spent in custody on a PPS sanction before that term of imprisonment is calculated.

**Summary of Argument**

Plaintiff was serving a prison sentence when the Governor granted plaintiff the benefit of conditionally commuting the remaining six months of prison to be served as PPS, in addition to the term of PPS imposed in the original sentence. That commutation required him to obey all laws during the full term of supervision and provided that the Governor could revoke the commutation and reinstate the original sentence if plaintiff violated that condition. Plaintiff violated the commutation by committing a new crime and the Governor revoked the commutation. Plaintiff sought, and the trial court granted, *habeas corpus* relief. The trial court concluded that the Governor's revocation of the conditional commutation was unlawful, that the revocation harmed plaintiff by denying him procedural due process protections, and that the time that plaintiff served for a post-prison supervision sanction before the revocation should have been credited towards the reinstated prison term. Those rulings were incorrect.

First, the Governor's revocation of the commutation was a valid exercise

of her clemency powers under Article V, section 14, of the Oregon Constitution. The Governor may condition acts of clemency, and, in doing so, retains the authority to revoke those acts. The revocation did not render the commutation unlawful because it resulted in plaintiff serving more time in the aggregate on PPS than what the criminal judgment provided. Rather, the revocation reinstated the prison term that was imposed in his original sentence.

Second, assuming some minimal procedural due process protections apply to the revocation of a conditional commutation, any violation of those protections that occurred here was harmless. Plaintiff received the full due process protections afforded to defendants in criminal cases, and to individuals serving PPS, when he pleaded guilty to committing a new crime and agreed to a sanction for that conduct.

Finally, because no statute authorizes DOC to credit time served on a *post*-prison supervision sanction *before* the person serves the term of imprisonment, the trial court erred in concluded that plaintiff was entitled to such credit after his original prison term was reinstated.

**Statement of Facts**

The facts are largely procedural and were not disputed in the trial court. In 2019, plaintiff was convicted of failing to report as a sex offender and stipulated to a downward departure. (ER 1–4). In October 2020, he violated

the terms of probation and the trial court sentenced him to 16 months of prison and 24 months of PPS. (ER 5–7).

Five months later, as a result of the continuing COVID-19 crisis, the Governor granted plaintiff the extraordinary benefit of a conditional commutation (a "COVID commutation" to reduce the prison population), allowing him to serve the remaining six months of prison on PPS, in addition to the PPS term originally imposed. (ER 8–10). One of the conditions of that commutation required plaintiff to obey all laws during that supervision period, which is also a requirement of PPS. (ER 9). The commutation provided that, if the Governor determined "in his or her judgment" that plaintiff had violated the terms of the commutation, the Governor had the authority to revoke the commutation. (ER 9). The commutation further directed that, if revocation occurred, plaintiff would return to prison to serve the remainder of his sentence. (ER 9). Plaintiff was released, and his PPS was set to expire in September 2023. (ER 10).

Plaintiff's PPS was later recalculated to expire in June 2024.[1] In February 2024, he pleaded guilty to a new count of failing to report and was

---

[1] In the trial court, plaintiff did not dispute that he had 270 days of "inoperative time," which usually means that the person absconded, although the record does not reflect exactly why the board made that determination. OAR 255-005-0005(34).

sentenced to 36 months of probation. (ER 12–15). For committing that conduct while on PPS, he accepted a 44-day sanction. (ER 16).

In March 2024, the Governor revoked plaintiff's conditional commutation based on the new crime and he was re-arrested in April to serve the remaining 5.5 months of prison on his original sentence. (ER 17). In September 2024, plaintiff sought *habeas corpus* relief in the trial court.[2]

In October, after receiving briefing and conducting a hearing, the trial court concluded that the Governor's revocation of the commutation was unlawful and violated plaintiff's due process rights. The trial court concluded that the Governor had violated separation of powers principles by revoking the conditional commutation, "because it resulted in [] a sentence that was greater than the sentence originally imposed by the court." (Tr 57). The court further found that the revocation without a hearing resulted in a procedural due process violation that was not harmless because, in its opinion, plaintiff might have decided not to enter a guilty plea or accept the sanction. (Tr 58–59).

The trial court also concluded that plaintiff was entitled to credit for the time served on the sanction against his reinstated prison term, concluding that

[2] Plaintiff initially sought relief in the Oregon Supreme Court, and that court declined to issue a writ of *habeas corpus*. *Tugman v. Kotek* (S071321).

the post-prison term that he served before the revocation was "part of the original sentence as imposed." (Tr 59).

The trial court ordered that a *habeas corpus* writ issue and plaintiff was released from custody. (ER 21–28). Defendants appeal from the judgment issuing the writ.

## ASSIGNMENT OF ERROR

The trial court erred by granting plaintiff's petition for *habeas corpus* relief.

### A. Preservation of Error

In his memorandum in support of his petition, as relevant to this appeal, plaintiff argued that he was entitled to *habeas corpus* relief for three reasons: (1) that the Governor's act of revoking his commutation unlawfully increased his punishment, violating the separation of powers provision in Oregon Constitution; (2) that he was entitled to credit for the time served on the PPS sanction; and (3) that the commutation violated his Due Process rights.

In response, defendants argued that the revocation did not increase plaintiff's term of imprisonment because he still had 177 days left of his prison term to serve. The fact that plaintiff may serve a longer combined term of prison and supervision does not result in a more severe punishment because plaintiff, not the Governor, triggered the revocation by violating the conditions of supervision. Defendants further argued that, because plaintiff's total

incarceration time had not increased, his complaint was about the length of his PPS term, which is not available to challenge in a *habeas corpus* petition.

Defendants also argued that the revocation of a commutation does not implicate procedural due process protections, but even if it did, any error in revoking the commutation without process was harmless here because plaintiff had entered a guilty plea to the charges that prompted the revocation.

The parties made the same arguments at the hearing. (Tr 5–54). Thus, defendants preserved their arguments on appeal.

### B. Standard of Review

This court reviews the validity of the Governor's exercise of her clemency power for legal error. *See Ex Parte Houghton*, 49 Or 232, 234–36, 89 P 801 (1907) (so reviewing).

## ARGUMENT

The revocation of the conditional commutation was a valid exercise of the Governor's clemency power under Article V, section 14, of the Oregon Constitution. The trial court erred in concluding otherwise. The court also erred in concluding that any procedural due process violation that occurred as a result of the commutation revocation was harmful, because plaintiff received the full due process protections that apply to criminal proceedings when he was convicted of the new crime. Finally, the court erred in concluding that DOC has the authority to credit time served on a PPS sanction (for conduct unrelated

to the crime for which an offender was sentenced) against a later reinstated prison term.

### A. The Governor validly exercised her authority to revoke plaintiff's conditional commutation.

The trial court incorrectly concluded that the Governor exceeded her clemency powers and violated the separation of powers provision in Article III, section 1, of the Oregon Constitution, by encroaching on the judicial power to impose sentence. That ruling relied on an incorrect premise that the revocation resulted in increasing plaintiff's sentence. As explained below, the Governor validly exercised her clemency powers.

Article V, section 14, of the Oregon Constitution vests the Governor with a broad power to grant clemency:

> [The Governor] shall have the power to grant reprieves, commutations and pardons, after conviction, for all offences [*sic*] except treason, subject to such regulations as may be provided by law.

A commutation is the substitution of a "less severe" punishment for the punishment that a court imposed. *Thompson v. Fhuere*, 372 Or 81, 94, 545 P3d 1233 (2024). It has "the same legal effect as though the sentence had originally been for the commuted term." *Id.* at 95. "The power to commute sentences includes the power to impose 'conditions which do not in themselves offend the Constitution, but which are not specifically provided for by statute.'" *Marteeny*

*v. Brown*, 321 Or App 250, 288, 517 P3d 343, *rev den*, 370 Or 303 (2022) (citing *Schick v. Reed*, 419 US 256, 264, 95 S Ct 379, 42 L Ed 2d 430 (1974)).

The commutation may be conditional, in which case the Governor retains the authority to revoke it. *Ex Parte Houghton*, 49 Or 232; *Ex Parte Dormitzer*, 119 Or 336, 249 P 639 (1926). Once the Governor revokes a commutation, the court-imposed sentence comes back into effect as though the sentence had not been commuted. *See Ex Parte Houghton*, 49 Or at 236 ("Upon its revocation the legal status of the petitioner must be regarded the same as it was before the pardon was granted.") (quoting *Arthur v. Craig*, 48 Iowa 264, 269 (1878)).

Here, plaintiff's court-imposed sentence was 16 months in prison followed by 24 months of post-prison supervision. (ER 6–7). Plaintiff served a little more than five months in prison on that sentence, and his facesheet shows that he also received credit for 51 days of time served in local custody and is eligible for as much as 56 days of earned-time credit. (ER 18). Thus, when the commutation was revoked, he still had almost six months left to serve on his 16-month prison term.[3]

---

[3] The trial court correctly rejected plaintiff's argument that the terms of the commutation itself precluded revocation. (Tr 57). The commutation did not impose a temporal requirement that limited revocation to the time before a sanction was imposed. The Governor's revocation here is not within the post-prison supervision framework; it removes this case from that framework entirely. The trial court correctly concluded that, if the commutation was

*Footnote continued…*

The trial court erred by concluding that the Governor exceeded her clemency powers and violated the separation of powers provision because the combined prison and PPS terms that plaintiff may ultimately serve is purportedly a "more severe" punishment than the judicially imposed original sentence. The trial court incorrectly compared the original, judicially imposed sentence to the sentence that plaintiff served *after* violating the conditions of commutation. The correct comparison is between the original sentence and the commuted sentence. Here, the original, judicially imposed sentence was 16 months imprisonment and 24 months of post-prison supervision, whereas the commuted sentence was 10 months imprisonment with 30 months post-prison supervision, with the possibility of revocation. That is "a less severe punishment" than the full term of prison. And although the terms of the commutation leave open the possibility that the recipient will end up serving a longer combined term of prison and supervision *if* the recipient violates the conditions, the commuted sentence—even with that contingency—is still a less severe punishment than the certainty of serving the full prison term. It is the recipient, not the Governor, who triggers the contingency by violating the conditions.

---

*(…continued)*
interpreted as plaintiff contended, the Governor would have unconstitutionally ceded her commutation authority to the board.

Nor did the revocation impose a more severe punishment than plaintiff originally faced; it merely reinstated the original punishment imposed by the sentencing court, which plaintiff had not yet fully served. After the revocation, plaintiff is in the same legal position as someone who has not fully served a term of incarceration—for example, because of an erroneous court order that was overturned on appeal, or because the person absconded—and must return to custody to complete the lawful sentence. *See Ex Parte Houghton*, 49 Or at 236 ("Upon its revocation the legal status of the petitioner must be regarded the same as it was before the pardon was granted."); *cf.* OAR 291-100-0130 (time on escape is not credited towards a sentence). A revocation reinstates the previous sentence; it does not and cannot increase the sentence.[4]

The trial court's ruling effectively constrains the Governor's authority with respect to conditional commutations that turn prison terms into PPS. But the Governor's broad clemency power is not so limited. Exercising the clemency power under Article V, section 14, is a matter committed to the Governor's sole discretion. Although the Governor can issue an unconditional

---

[4] In that respect, revocation of clemency is unlike revocation of probation by a court. When a court revokes probation, the court retains authority over the case and sentences the defendant to a new punishment. When the Governor revokes conditional clemency, the Governor cedes authority over the punishment and the sentencing court's judgment comes back into effect—subject, of course, to the Governor's authority to grant a new act of clemency.

commutation, she does not have to. The power to pardon or commute a sentence altogether subsumes and includes the power to commute a sentence subject to conditions.[5] *Ex Parte Houghton*, 49 Or at 235. The Governor's discretion to impose conditions is important, because she may not be inclined to exercise clemency if the decision must be unqualified and irrevocable or if the full original sentence cannot be reinstated upon revocation.

In sum, the commutation sentence, including the possibility of revocation, is not greater or more severe than the original sentence. Accordingly, no separation of powers violation occurred, and trial court erred by concluding otherwise. Rather, the Governor lawfully exercised her clemency power when she revoked the commutation, which resulted in the original sentence being reinstated.

**B. Any procedural due process violation was harmless.**

The trial court erred in concluding that any procedural due process violation that occurred when the Governor revoked plaintiff's conditional commutation was harmful. Even if the revocation of an act of clemency

---

[5] Moreover, having benefitted by obtaining a conditional commutation to which he accepted by leaving prison, and then violating the conditions to which he agreed, he cannot be heard to complain that a conditional commutation was never valid in the first place.

generally would give rise to due process rights, which is questionable,[6] any violation would be harmless here. It is undisputed that the commission of a new crime was a basis to revoke the commutation and no additional hearing or process was required to confirm that plaintiff did, in fact, commit a new crime. He received the full panoply of process in his criminal proceeding and pleaded guilty to failure to report as a sex offender, which forms a lawful basis for the revocation. (ER 12–15). That guilty plea obviates the need for additional process in connection with the revocation.[7]

The Washington Supreme Court reached that conclusion on similar facts in *In re Bush*, 164 Wash 2d 687, 193 P3d 103 (Wash 2008). There, the Governor commuted more than a decade of remaining prison time to a 24-

---

[6] The commutation expressly reserved the Governor's authority to revoke at any time for any reason at all, as long as the Governor determined that plaintiff's "continued release in the community no longer serves the interests of the State of Oregon." (ER 9). The Governor thus could have revoked the commutation even if plaintiff had *not* committed a new crime. That unfettered discretion is not the type of scheme that typically gives rise to due process rights. *Cf. Bd. of Pardons v. Allen*, 482 US 369, 375, 107 S Ct 2415, 96 L Ed 2d 303 (1987) (a parole scheme that allows officials "to parole whomever they wish" without constraining that discretion in some way "does not create a liberty interest in parole release"); *Ohio Adult Parole Auth. v. Woodard*, 523 US 272, 276, 118 S Ct 1244, 140 L Ed 2d 387 (1998) (plurality op) ("The Due Process Clause is not violated where, as here, the procedures in question do no more than confirm that the clemency and pardon powers are committed, as is our tradition, to the authority of the executive."). But this court need not decide that question here, because any violation was harmless.

[7] Plaintiff also received the procedural protections afforded to parolees before his PPS sanction was imposed.

month term of community custody on condition that the offender not commit another crime. *Id*. at 105. After the offender was charged with assaulting a child, the Governor—based on the police reports and similar material—summarily revoked the commutation. *Id.* at 105–06. The offender later entered into a diversion-type agreement under which he stipulated to the accuracy of the police reports. *Id.* at 106, 108. Although the Washington Supreme Court held that the summary revocation violated the offender's right to due process, it concluded that the error was harmless. *Id.* at 108. The offender's stipulation to the police reports meant that the evidence was "more than sufficient for a finder of fact to conclude" that he had committed the assault, and he had not alleged that he had any defense to the charge. *Id.* Thus, the Supreme Court had "no indication that a hearing in compliance with due process mandates would have changed the conclusion" that he had committed a crime in violation of the conditions of commutation. *Id.* Accordingly, the procedural error was harmless.

Here, plaintiff did not just stipulate to the accuracy of certain evidence; he affirmatively pleaded guilty to the charge *before* the Governor revoked his commutation. The judicial determination of guilt based on that plea conclusively establishes that plaintiff violated the condition of his commutation that he "not violate any state or federal law" during his post-prison supervision period. (ER 9). No hearing would result in a different conclusion here.

The trial court incorrectly concluded that plaintiff was harmed because he may have chosen not to plead guilty or to accept the PPS sanction for his conduct. (Tr 58–59). That is not a harm that could have resulted from the denial of procedure before the revocation. The trial court incorrectly conflated plaintiff's decision to plead guilty and accept a sanction with the *Governor's* decision to revoke his commutation. That is, although plaintiff may have chosen not to plead guilty or accept the sanction to avoid a future revocation, the Governor's decision to revoke his commutation did not—and could not—result in plaintiff's conviction or the imposition of a sanction.

Moreover, to the extent plaintiff wants not an opportunity to contest the facts but rather to appeal to the Governor's unreviewable discretion, he had and has that opportunity. Nothing prevented, or prevents, plaintiff from requesting that the Governor rescind the revocation based on whatever information plaintiff thinks relevant. The Governor has in fact taken that step in other cases. The Governor has not rescinded here, and it is highly speculative that she would have changed her decision with any additional process or the information that plaintiff suggests he would have provided, such as that he was not aware that the commutation was revocable or that other individuals may have thought that a lesser sanction was sufficient. (*See* Plaintiff's Memorandum in Support of Emergency Petition for Writ of *Habeas Corpus* at 30 (describing the arguments

that plaintiff would have made)). That sort of speculation is not enough to establish harmfulness.

### C. ORS 137.370(2) precludes DOC from applying the custody time that plaintiff served as a sanction to his later-served prison term.

The trial court incorrectly concluded that DOC should have "included" plaintiff's 44-day sanction—imposed for conduct unrelated to the original crime—after the commutation was revoked and the original prison term was reinstated. (Tr 60).

The legislature has authorized the Department of Corrections to give credit for time served under ORS 137.370(2). The plain text of that statute provides that an offender's "term of confinement" is limited to time served on the arrest for the crime and time served in a DOC program outside of a prison:

> When a person is sentenced to imprisonment in the custody of the Department of Corrections, for the purpose of computing the amount of sentence served the term of confinement includes only:
>
> (a) The time that the person is confined by any authority after the arrest for:
>
> > (A) The crime for which sentence is imposed;
> >
> > (B) A lesser included or greater inclusive offense of the crime for which sentence was imposed; and
> >
> > (C) Any other crime constituting a violation of Oregon law within the same county designated by the sentencing court in the judgment as having been committed as part of the same criminal episode as the crime for which sentence was imposed; and

> (b) The time that the person is authorized by the Department of Corrections to spend outside a confinement facility, in a program conducted by or for the Department of Corrections.

The terms used in ORS 137.370 are defined in other statutes. ORS 161.515 defines a "crime" as "an offense for which a sentence of imprisonment is authorized." ORS 161.505, in turn, defines an "offense" as "conduct for which a sentence to a term of imprisonment * * * is provided by any law." Finally, ORS 161.085 defines "conduct" as "an act or omission and its accompanying mental state." Those statutes, taken together, provide that a person who is arrested will receive credit for any imprisonment that results from the conduct for which the person is later sentenced. No statute provides DOC the authority to credit time served on a *post*-prison sanction *before* the person completes the term of imprisonment, for conduct that is not directly related to the original crime or sentence.

That situation is unlike a person who receives credit for time served on a probation violation if that probation is later revoked, and term of prison is imposed. ORS 137.372 expressly provides authority for DOC to credit time served for a probation violation if a prison term is later imposed. No similar

statute provides DOC provides the authority to credit time served for a sanction on a post-prison term toward a subsequent prison term.[8]

To be sure, a sentencing court may order that a person receive credit for time served for other conduct. *See* ORS 137.370(4) (providing the authority for a court to order that a person receive presentence incarceration credit "for a crime or conduct that is not directly related to the crime for which the sentence is imposed."); *State ex rel Torres-Lopez v. Fahrion*, 373 Or 816, 837, __ P3d __ (2025) (holding that ORS 137.370(4) provides a sentencing court with the authority to credit presentence incarceration for a separate crime, offense, or conduct, to a *later* term of incarceration). But that authority is granted to a trial court and occurs at sentencing.

In sum, because ORS 137.370 provides that credit for time served is limited to the situations described in that statute, DOC lacks the authority to credit that sanction towards the term of imprisonment. It is undisputed that the conduct for which plaintiff was arrested, and for which he accepted a 44-day sanction, was a new crime, unrelated to the original crime for which he received a prison term. Accordingly, the trial court incorrectly concluded that the time

---

[8] It does not appear that ORS 137.370, or any other statute, contemplates the situation here: a person serving a sanction on a post-prison term *before* fully serving the prison term.

that 44-day sanction that plaintiff agreed to serve on his post-prison term should be later credited towards his original prison term.[9]

## CONCLUSION

This court should reverse the trial court's judgment and remand with directions for that court to deny plaintiff's claim for *habeas corpus* relief and dismiss the writ.

Respectfully submitted,

DAN RAYFIELD #064790
Attorney General
BENJAMIN GUTMAN #160599
Interim Deputy Attorney General

/s/ Kirsten M. Naito

KIRSTEN M. NAITO #114684
Assistant Attorney General
kirsten.m.naito@doj.oregon.gov

Attorneys for Defendants-Appellants Tina Kotek, Governor of the State of Oregon, and Tom McLay, Superintendent, Powder River Correctional Facility

[9] If this court concludes that plaintiff was entitled to 44 days of credit for time served, it should still reverse the judgment, and remand for the trial court to issue the writ only to DOC, not the Governor.

IN THE COURT OF APPEALS OF THE STATE OF OREGON

MICHAEL SCOTT TUGMAN,
Plaintiff-Respondent,

v.

TINA KOTEK, Governor of the State of Oregon, and TOM MCLAY,
Superintendent, Powder River Correctional Facility,
Defendants-Appellants.

---

Baker County Circuit Court
24CV45115
A185753

Appeal from the Judgment of the Circuit Court for Baker County
Honorable Cheryl A. Pellegrini, Judge

---

# RESPONDENT'S ANSWERING BRIEF AND SUPPLEMENTAL EXCERPT OF RECORD

---

**Nadia Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street, Ste 910
Portland, OR 97204
Tel: 503-228-6474
nadia@sugermandahab.com

*Attorneys for Plaintiff-Respondent*

**Dan Rayfield**, OSB No. 064790
ATTORNEY GENERAL
**Kirsten M. Naito**, OSB No. 114684
ASSISTANT ATTORNEY GENERAL
1162 Court St NE
Salem, Oregon 97301-4096
Tel: 503-378-4402
kirsten.m.naito@doj.oregon.gov

*Attorney for Defendants-Appellants*

November 2025

## TABLE OF CONTENTS

STATEMENT OF THE CASE ........ 1

SUMMARY OF ARGUMENT ........ 1

QUESTIONS PRESENTED ........ 1

FACTUAL BACKGROUND ........ 2

I. Governor Brown commutes Respondent's sentence........ 3

II. Governor Kotek revokes Respondent's commutation. ........ 5

III. The Supreme Court declines original jurisdiction, and the trial court thereafter grants Respondent's petition for habeas relief........ 8

ANSWER TO APPELLANTS' ASSIGNMENT OF ERROR ........ 10

I. Preservation of Error ........ 10

I. Standard of Review ........ 10

II. Argument........ 11

A. The Governor's revocation unlawfully increased the total duration of Respondent's sentence........ 11

B. The Governor's revocation violated Respondent's due process rights, and that violation was not harmless........ 15

1. Plaintiff had a constitutionally protected liberty interest.... 16

2. Plaintiff was entitled to due process protections under *Morrissey* before he could be deprived of that constitutionally protected liberty interest. ........ 18

3. Governor Kotek did not provide Respondent with any process before revoking his commutation. ........ 21

4. The due process violation was not harmless. ........ 22

C. The revocation was contrary to the post-prison supervision framework incorporated into the commutation........ 23

1. The Governor lacked authority to revoke after Respondent completed a Board-imposed revocation for the same offending conduct. .......... 24

2. If the Governor could revoke after Respondent had completed the Board-imposed revocation, Respondent is entitled to credit for the days served. .......... 27

CONCLUSION .......... 27

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Bd. of Parole*,
205 Or App 443, 134 P3d 1055 (2006) ........ 16

*Alexander v. Gower*,
200 Or App 22, 113 P3d 917 (2005) ........ 10

*Biddle v. Perovich*,
274 US 480, 47 S Ct 664, 71 L Ed 1161 (1927) ........ 12

*Bristol v. Peters*,
No. 3:17-CV-00788-SB, 2018 WL 6183274 (D Or Nov 27, 2018) ........ 21

*Brown v. Kotek*,
372 Or 260, 548 P3d 1286 (2024) ........ 4, 24

*Chapman v. California*,
386 US 18, 87 S Ct 824, 828, 17 L Ed 2d 705 (1967) ........ 22, 23

*Conn. Bd. of Pardons v. Dumschat*,
452 US 458, 101 S Ct 2460, 69 L Ed 2d 158 (1981) ........ 16

*Fehl v. Martin*,
155 Or 455, 64 P2d 631 (1937) ........ 13

*Fleenor v. Hammond*,
116 F2d 982 (6th Cir 1941) ........ 16, 18, 20

*Haygood v. Younger*,
769 F2d 1350 (9th Cir 1985) ........ 18

*Heinz v. McNutt*,
582 F2d 1190 (9th Cir 1978) ........ 19

*In re Bush*,
164 Wash 2d 697, 193 P3d 103 (2008) ........ 17, 18, 22, 23

*Marteeny v. Brown*,
321 Or App 250, 517 P3d 343 (2022) ........ 13

*Morrissey v. Brewer*,
408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972) ........ passim

*Noble v. Bd. of Parole*,
327 Or 485, 964 P2d 990 (1998) ........ 18

*Pope v. Chew*,
521 F2d 400 (4th Cir 1975) ........ 16, 18

*Schick v. Reed*,
419 US 256, 95 S Ct 379, 42 L Ed 2d 430 (1974) ........ 13

*State ex rel. Frohnmayer v. Or. State Bar*,
307 Or 304, 767 P2d 893 (1989) ........ 12

*State ex rel. Huddleston v. Sawyer*,
324 Or 597, 932 P 2d 1145 (1997) ........ 12

*State v. Brumbach*,
273 Or App 552, 359 P3d 490 (2015) ........ 22

*State v. Cook*,
340 Or 530, 135 P3d 260 (2006) ........ 22

*State v. Haugen*,
353 Or 715, 306 P3d 592 (2013) ........ 12, 13

*Stogsdill v. Board of Parole*,
342 Or 332, 154 P3d 91 (2007) ........ 16

*Thompson v. Fhuere*,
372 Or 81, 545 P3d 1233 (2024) ........ 13

*United States v. Diaz-Burgos*,
601 F2d 983 (9th Cir 1979) ........ 20

*United States v. Segal*,
549 F2d 1293 (9th Cir 1977) ........ 19

*White v. Reyes*,
335 Or App 124, 558 P3d 43 (2024) ........ 10

*Wilkinson v. Austin*,
545 US 209, 125 S Ct 2384, 162 L Ed 2d 174 (2005) ........ 16

*Wood v. Fitzgerald*,
3 Or 568 (1870) ........ 13

*Young v. Harper*,
520 US 143, 117 S Ct 1148, 137 L Ed 2d 270 (1997) .................................. 21

**Other Authorities**

Black's Law Dictionary (9th ed 2009) ........................................................... 13

**Regulations**

OAR 255-005-0005(24) ..................................................................................... 14

OAR 255-075-0067(3) ....................................................................................... 25

OAR 255-075-0067(6) ....................................................................................... 25

OAR 255-075-0079 ............................................................................................ 25

OAR 291-100-0008(17) ..................................................................................... 14

**Constitutional Provisions**

Or Const, Art III, § 1 ........................................................................................ 11

Or Const, Art V, § 14 ................................................................ 12, 13, 14, 15

US Const, Amend XIV, § 1 ............................................................................... 16

## STATEMENT OF THE CASE

Respondent generally agrees with Appellants' statement of the nature of the action and relief sought, statement of the judgment, and statement of the basis for appellate jurisdiction. Respondent also agrees that the appeal was timely filed.

## SUMMARY OF ARGUMENT

The trial court properly granted Respondent's petition for habeas relief for three independent reasons. First, in revoking Respondent's commutation, the Governor unlawfully increased the total duration of Respondent's sentence in violation of the separation-of-powers provision of the Oregon constitution. Second, the Governor's revocation denied Respondent the process due under the Fourteenth Amendment to the U.S. Constitution, and that denial of process was not harmless. Finally, to the extent that the revocation constituted a second sanction for the same underlying conduct, it was also impermissible. The trial court's judgment should be affirmed.

## QUESTIONS PRESENTED

The questions presented in this appeal are:

1. Did the Governor's revocation of Respondent's conditional commutation and reinstatement of his full prison sentence—which resulted in Respondent serving a longer total durational sentence than the sentence that

initially was imposed—violate Article III, section 1, of the Oregon Constitution?

2. Did the Governor's revocation of Respondent's conditional commutation, which was issued without notice or any opportunity to be heard, violate Respondent's due process rights?

3. Did the Governor have the authority to revoke Respondent's conditional commutation after Respondent had already completed a Board-approved sanction for the same offending conduct?

## FACTUAL BACKGROUND

The factual and procedural history of this action is as follows.

On September 6, 2019, Respondent Michael Scott Tugman ("Respondent") pleaded guilty to one count of failure to report as a sex offender. *See State v. Tugman*, Case No. 19CR22315 (Baker Cty Cir Ct). ER-1. Pursuant to a stipulated agreement, he received a downward dispositional departure and was sentenced to 60 months of probation. ER-2. On October 15, 2020, Respondent was found in violation of his probation, resulting in its revocation and a total durational sentence of 40 months: 16 months in the custody of the Oregon Department of Corrections (ODOC), and 24 months of post-prison supervision. ER-6-7. That 40-month sentence is the sentence underlying this appeal.

## I. Governor Brown commutes Respondent's sentence.

On March 29, 2021, while Respondent was serving that 40-month sentence, former Governor Kate Brown signed an Executive Order commuting the remainder of the sentence "as of the 1st day of April, 2021, immediately upon execution." ER-9. Governor Brown's order did not identify Respondent by name; rather, it incorporated him and 12 others who satisfied certain release criteria by reference to an attachment entitled "Exhibit A." ER-10.[1]

The Executive Order stated that Governor Brown had "determined that the continued incarceration of [Respondent did] not serve the interests of the State of Oregon or [Respondent]." ER-9. The order set forth the following conditions of the commutation:

> "1. Each Releasee shall continue to meet the Release Criteria as of the effective date of this order; and
>
> "2. This order does not relieve any of the Releasees of post-prison supervision; and
>
> "3. As applied to each Releasee on an individualized basis, each Releasee shall not violate any state or federal law during the period of time from the effective date of this order through the end of that particular Releasee's post-prison supervision (calculated by DOC and included in Exhibit A); and

---

1 The release criteria were "(1) Be within six months of release, as calculated by DOC staff; (2) Not be serving a sentence for a person crime; (3) Have served at least 50% of their sentence; (4) Have a record of good conduct for the last 12 months; (5) Have a suitable housing plan prior to the date set for their early release; (6) Have their out-of-custody health care needs assessed and adequately addressed prior to the date set for their early release; and (7) Not present an unacceptable safety, security, or compliance risk to the community[.]" ER-8.

> "4. If the Governor of the State of Oregon should determine in his or her judgment that a particular Releasee has violated any of the conditions of this conditional and revocable commutation, or that a Releasee's continued release in the community no longer serves the interests of the State of Oregon, that individual Releasee's commutation may be revoked, at which time the Releasee shall be returned to prison to serve out his or her sentence that was remaining at the time this commutation was granted according to the terms of the Releasee's Judgment of Conviction."

ER-9. Unlike many other commutation orders that Governor Brown issued during that time, the order commuting Respondent's sentence was not accompanied by an acceptance agreement. *See, e.g.*, *Brown v. Kotek*, 372 Or 260, 263, 548 P3d 1286 (2024) (describing and construing commutation acceptance agreement).

About one week before his release from ODOC custody, Respondent was called from his unit to a medical office at Powder River Correctional Facility with four or five other adults in custody. SER-1. When he and the others arrived, they were told that their sentences had been commuted, that their remaining prison time would be converted to post-prison supervision and added to their existing post-prison supervision terms, and that they would be released on April 1, 2024. SER-2. Respondent was then "medically cleared" for release. SER-2.

Respondent was released from ODOC custody on April 1, 2021. SER-2. He did not receive a copy of Governor Brown's order commuting his sentence, nor was he informed that the commutation was conditional and revocable.

SER-2. Respondent was also not aware of any conditions imposed on him relating to the commutation other than those connected to his post-prison supervision. SER-2. On the day that he was released, the approximate six-month (177-day) prison term that remained on Respondent's sentence was converted to post-prison supervision and added to his initial 24-month post-prison supervision term. SER-28–29, 71–72. At the time of his release, that term was set to expire on June 20, 2024. SER-72.

**II. Governor Kotek revokes Respondent's commutation.**

On January 19, 2024, Respondent was accused of one count of failure to report as a sex offender in *State v. Tugman*, Case No. 24CR03038 (Baker Cty Cir Ct), after he neglected to update his address within ten days of changing his residence. ER-11.

On February 2, 2024, the Board of Parole and Post-Prison Supervision ("Board") approved a recommendation from Respondent's supervising officer that Respondent serve a 44-day jail sanction because his failure to report was a violation of his post-prison supervision terms. ER-16. Accordingly, the Board issued an "Order to Continue/Amend" Respondent's supervision. SER-6.

On February 5, 2024, Respondent pleaded guilty to failure to report in Case No. 24CR03038. ER-12. Pursuant to a stipulated agreement, he received a downward dispositional departure and was sentenced to 30 days in jail and 36

months of probation. ER-14. On or about February 12, 2024, Respondent completed the jail sentence associated with that agreement. SER-2.

On or about February 25, 2024, Respondent completed the 44-day Board-approved sanction and was released from jail. SER-3. Upon his release, Respondent reported to Officer Monahan, who informed Respondent that the Governor was considering revoking his commutation. SER-3. Respondent was unaware before that time that his commutation could be revoked. SER-3. He told Officer Monahan that he had just learned that his partner was pregnant and due in October, and that he was worried that a revocation could affect his ability to support his partner and his new baby. SER-3.

On March 12, 2024, unbeknownst to Respondent or Officer Monahan, SER-5, SER-11, SER-13; Governor Kotek signed an order revoking Respondent's commutation. ER-17. The order stated that Respondent had "agreed to abide by the terms and conditions of his post-prison supervision and not to violate any state or federal law," and that Governor Kotek had "determined in [her] sole judgment that [Respondent] violated conditions [of the commutation]." ER-17.

Respondent reported to his supervising officer four times between March 12 and April 5, 2024. SER-3. Both he and the officer remained ignorant of the revocation during that time. SER-5, SER-11, SER-13. On April 5, 2024, the Board's Executive Director, Dylan Arthur, emailed Officer Monahan stating

that the Governor had revoked Respondent's commutation on March 12, 2024, and that an arrest warrant would be issued. SER-13.

On April 15, 2024, Respondent's cousin dropped him off at the Baker County Parole and Probation office for a scheduled check-in. SER-3. After his supervising officer called Respondent back to her office, he was arrested on the basis of Governor Kotek's revocation. SER-3. Respondent's supervising officer transported Respondent to the Baker County Jail, where she informed him that she did not know how long he would be imprisoned on the revocation. SER-4. The next day, the officer visited Respondent in jail and informed him of her understanding that Respondent would be reimprisoned for several months, and then would serve 24 months of post-prison supervision upon re-release. SER-4.

Respondent remained at the Baker County Jail for approximately ten days. SER-4. He was then taken to a jail in Multnomah County, where he stayed for one night. SER-4. Finally, on April 25, 2024, he was transferred to Coffee Creek Correctional Facility (CCCF). SER-4. Respondent received no additional information regarding the revocation at the time that he was returned to ODOC custody, other than that he would be required to serve—again—two years of post-prison supervision once he was released. SER-4. In other words, ODOC's and the Governor's position was that none of Respondent's time in the

community (and on post-prison supervision) between his commutation and its revocation would have any legal effect.

## III. The Supreme Court declines original jurisdiction, and the trial court thereafter grants Respondent's petition for habeas relief.

In August 2024, at which time Respondent remained in ODOC custody, he filed a habeas petition in the Orgon Supreme Court. *See Tugman v. Kotek*, S071321. The Supreme Court ordered briefing on the petition and then denied it without prejudice to Respondent seeking a writ in the trial court. *See* Order, *Tugman v. Kotek*, S071321 (Sept 13, 2024) (per curiam). Two justices dissented from the denial of the petition:

> "Plaintiff contends that he was imprisoned upon revocation without any procedural safeguards in violation of his constitutional due process rights, and that his continued incarceration is now unlawful not because of the conditions of his imprisonment, but because he has already served the entire sentence imposed by the court. Those issues may arise whenever government exercises the power of the state to take away a person's liberty by imprisoning them upon revocation of a commutation. Every day that plaintiff remains in prison is a significant, and possibly unlawful, deprivation of his liberty. And others currently imprisoned upon revocation of a commutation, or who will be incarcerated under similar circumstances in the future, may face similar significant, and possibly unlawful, deprivations of their liberty before this court finally decides the important legal issues presented in this case. 'The wrongful deprivation of liberty by the state, which petitioner alleges here, is a serious claim that justifies immediate judicial attention.'
>
> "I would give plaintiff's claim the 'immediate judicial attention' that it deserves and decide the disputed legal issues now."

Order, *Tugman v. Kotek*, S071321 (Sept 13, 2024) (Bushong & DeHoog, JJ., dissenting from denial of petition for writ of habeas corpus).

In September 2024, Respondent filed a petition for a writ of habeas corpus in the Baker County Circuit Court. ER-29. In October 2024, the trial court granted the petition and ordered Respondent to immediately be released. SER-76. The trial court ruled that the revocation violated Oregon's separation-of-powers provision because it resulted in a sentence longer than that which originally was imposed:

> "However, I do find that to the extent that – two things, that the revocation and its imposition and how it was calculated by the Department of Corrections, that that did violate the separation of powers because it resulted in – in a sentence that was greater than the sentence originally imposed by the court as modified – well, originally imposed by the court, which would've expired by its own terms on 6/20/24."

SER-73. The trial court further found that the revocation violated Respondent's due process rights:

> "That I also find that before imposing – or before revoking the commutation that Mr. Tugman was entitled under the provisions of the 14th Amendment procedural due process to notice and an opportunity to be heard on the intended revocation.
>
> "And I say this because I – the State has argued that there's nothing that Mr. Tugman could've argued that would've really made any difference or could've changed their mind. That is speculative. And I also note that both the 30-day jail sentence or the 36-month probation sentence in the Baker County case and the 44-day sanction by the Board, those were agreed to.
>
> The Baker County case was [a] stipulated recommendation that the court accept it. And the Board of Parole revocation was a 44-day sanction that the parole officer recommended after advising Mr. Tugman. And that he was aware of and agreed to. What – I

> think that it is a mistake to say well, because he agreed to those sentences that it's – you know, that any additional time that he served under the governor's revocation could constitutes (phonetic) harmless error.
>
> "That is – that is not true because the time that he ended up serving is considerably more than he had served. And also, had he had notice up front that the governor was going to revoke and that he would be subject to the imposition of the original prison term or the suspended prison term, the 177 days, he – he may have in a hearing – well, number one, it may have affected the decisions that he made as to agreeing to the Board of Parole sanction. And the stipulated sentence on the – the county case. And also, had he had an opportunity for hearing, he could've made those additional facts at least known to the governor for her consideration."

SER-73–75.

Consistently with the trial court's order, Respondent was immediately released from ODOC custody. The state timely appealed. ER-30–31.

## ANSWER TO APPELLANTS' ASSIGNMENT OF ERROR

### I. Preservation of Error

Respondent agrees that the error is preserved.

### I. Standard of Review

This Court reviews for errors of law a trial court's judgment granting habeas relief. *White v. Reyes*, 335 Or App 124, 136, 558 P3d 43 (2024) (citing *Alexander v. Gower*, 200 Or App 22, 24, 113 P3d 917 (2005)). "To the extent that the trial court's factual findings are supported by evidence in the record, those findings will not be disturbed." *Id.*

## II. Argument

The trial court properly granted Respondent's petition for habeas relief because the Governor's revocation of Respondent's commutation was unlawful. In revoking Respondent's commutation, the Governor unlawfully increased the total duration of Respondent's sentence in violation of the separation-of-powers provision of the Oregon constitution. The Governor's revocation also denied Respondent the process due under the Fourteenth Amendment to the U.S. Constitution, and that denial of process was not harmless. Finally, to the extent that the revocation constituted a second sanction for the same underlying conduct, it was also impermissible. The trial court's judgment should be affirmed.

### A. The Governor's revocation unlawfully increased the total duration of Respondent's sentence.

Article III, section 1, of the Oregon Constitution, which is Oregon's separation-of-powers provision, provides that "[t]he powers of the Government shall be divided into three separate branches, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these branches, shall exercise any of the functions of another, except as in this Constitution expressly provided." Or Const, Art III, § 1. Under that provision, a violation of the state constitutional separation-of-powers doctrine occurs when "the powers or functions of one governmental branch are performed by a person performing the duties of a different branch."

*State ex rel. Frohnmayer v. Or. State Bar*, 307 Or 304, 310, 767 P2d 893 (1989). This case concerns the appropriate separation of powers between the legislative, judicial, and executive branches concerning the power to impose and enforce sentences for crimes in individual cases.

Determining "the range of possible sentences for particular crimes" is a legislative function, and determining what sentence to impose in a particular case falls within the judiciary's "inherent power to structure sentences." *State ex rel. Huddleston v. Sawyer*, 324 Or 597, 615, 932 P 2d 1145 (1997). No other branch may perform a sentencing function except as expressly provided for by the Oregon Constitution.

The Oregon Constitution provides the Governor her clemency power; that is, the power "to grant reprieves, commutations, and pardons, after conviction, for all offenses except treason, subject to such regulations as may be provided by law." Or Const, Art V, § 14. The clemency power is the power of mercy, a "determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed." *State v. Haugen*, 353 Or 715, 736–37, 306 P3d 592 (2013) (quoting *Biddle v. Perovich*, 274 US 480, 486, 47 S Ct 664, 71 L Ed 1161 (1927)). Consistent with the nature of that power, the constitutionally identified acts of clemency—reprieves, pardons, and

commutations, *see* Or Const, Art V, § 14—all involve acts of *leniency*; that is, by definition, they all result in a decrease or suspension of punishment.[2]

Article V, section 14, does not authorize a Governor to *increase* a sentence. *See Schick v. Reed*, 419 US 256, 267, 95 S Ct 379, 42 L Ed 2d 430 (1974) (stating that "[o]f course, the President may not aggravate punishment."). Any gubernatorial action that results in a longer or otherwise more severe sentence than what the court initially imposed violates the separation-of-powers provision. *See, e.g.*, *Carpenter v. Lord*, 88 Or 128, 171 P 577 (1918) *overruled in part on other grounds by Haugen*, 53 Or 715 ("[T]he executive has no right to override or annul the action of the circuit court, or to interfere with it in the execution of its own judgment.").

Here, Governor Kotek's revocation impermissibly increased Respondent's sentence in violation of Article III, section 1. In Respondent's

---

[2] A commutation, for example, "is 'a change of punishment to which a person has been condemned to one *less severe*.' " *Thompson v. Fhuere*, 372 Or 81, 94, 545 P3d 1233 (2024) (quoting *Fehl v. Martin*, 155 Or 455, 459, 64 P2d 631 (1937)) (emphasis added); *Marteeny v. Brown*, 321 Or App 250, 288, 517 P3d 343 (2022) (a commutation "is '[t]he executive's substitution in a particular case of a less severe punishment for a more severe one that has already been judicially imposed on the defendant.' " (quoting Black's Law Dictionary 318 (9th ed 2009))). Likewise, "a reprieve is the temporary *suspension* of a criminal sentence," *Haugen*, 353 Or at 745 (emphasis in original), and a pardon relieves punishment all together, *Wood v. Fitzgerald*, 3 Or 568, 575 (1870) ("[A] general, absolute pardon, relieves the person to whom it is granted, not only from imprisonment, but from all the consequential disabilities of the judgment of conviction, and restores such person to the full enjoyment of his civil right.").

criminal case, the trial court had sentenced him to a total durational sentence of 40 months: 16 months in prison and 24 months of post-prison supervision. At the time Governor Brown commuted Respondent's sentence, approximately six months remained on his prison term before he was entitled to release. Governor Brown commuted the remaining six months (177 days) of incarceration to six months of post-prison supervision. ER-9 ("I, [Governor Kate Brown], hereby commute the remaining term of incarceration of [Respondent] * * *, from incarceration to post-prison supervision[.]"). In other words, consistent with her authority under Article V, section 14, Governor Brown commuted Respondent's punishment of incarceration—confinement in prison—to a less severe punishment of post-prison supervision during the final six months of his sentence.

Respondent was released from prison pursuant to the commutation on April 1, 2021, and was arrested on the revocation three years later, on April 15, 2024. During that period in the community—totaling 1,076 days—270 days were deemed "inoperative" for the purposes of post-prison supervision.[3] ER-19. Thus, Respondent served more than 26 months (1,076 days minus 270 days) on post-prison supervision after his release and before his arrest.

---

[3] Inoperative time is "[t]ime spent on abscond, escape, or unauthorized departure from custody, any form of temporary or transitional leave, or parole or post-prison supervision, which does not count toward service of the sentence(s)." OAR 255-005-0005(24); OAR 291-100-0008(17).

By revoking Respondent's commutation after he had served over 26 months of post-prison supervision, and then requiring him to serve six months in prison **and** 24 months of post-prison supervision under the original sentence, Governor Kotek increased Respondents original court-imposed sentence from 40 months—16 months in prison and 24 months of post-prison supervision—to 66 months—16 months in prison and over 50 months of post-prison supervision. In Appellants' view, he post-prison supervision that Respondent served between the commutation and the revocation had no legal effect. That result, under any metric, amounts to an increase in punishment beyond Respondent's original sentence.

By the time the trial court granted Respondent's petition, he had served a sentence greater than what the sentencing court ordered. Because the Governor lacks authority to increase a person's sentence—by commutation or otherwise—her revocation violated Article III, section 1. Respondent was entitled to immediate release. The trial court properly granted the writ.

**B. The Governor's revocation violated Respondent's due process rights, and that violation was not harmless.**

Governor Kotek's revocation of Respondent's commutation also offends the procedural protections afforded by the Due Process Clause of the Fourteenth Amendment, which provides that "No State shall * * * deprive any person of life, liberty, or property, without due process of law[.]" US Const, Amend XIV, § 1. "Procedural due process imposes constraints on governmental decisions

that deprive individuals of constitutionally protected liberty or property interests." *Alexander v. Bd. of Parole*, 205 Or App 443, 451, 134 P3d 1055 (2006). In analyzing a procedural due process claim, the Court should address two issues: (1) "whether the state has deprived a person of a liberty interest within the meaning of the Due Process Clause;" and (2) if so, "what process is due." *Stogsdill v. Board of Parole*, 342 Or 332, 336, 154 P3d 91 (2007).

**1. Plaintiff had a constitutionally protected liberty interest.**

Liberty interests protected by the Fourteenth Amendment can come "from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 US 209, 221, 125 S Ct 2384, 162 L Ed 2d 174 (2005). Although incarcerated individuals do not have a protected liberty interest in receiving a discretionary commutation or pardon, *Conn. Bd. of Pardons v. Dumschat*, 452 US 458, 465, 101 S Ct 2460, 69 L Ed 2d 158 (1981), when a commutation is granted and the recipient is released from custody, he acquires the same liberty interest possessed by a person released onto parole or probation. *See, e.g.*, *Pope v. Chew*, 521 F2d 400, 404 (4th Cir 1975) ("[W]e have been unable to imagin[e] how the liberty interests of one who is free on conditional pardon differ from one who is free on parole or probation."); *Fleenor v. Hammond*, 116 F2d 982, 986 (6th Cir 1941) ("Upon the granting of a pardon, albeit conditionally, the convict was entitled to his liberty and

possessed of a right which could be forfeited only by reason of a breach of the conditions of the grant.”). As the U.S. Supreme Court has explained in the context of parole, a liberty interest in avoiding revocation arises from the justifiable reliance on the conditions of release:

> “The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime * * * Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. * * * The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.”

*Morrissey v. Brewer*, 408 US 471, 482, 92 S Ct 2593, 33 L Ed 2d 484 (1972). In other words, the conditions that limit the Governor’s discretion to revoke a commutation, the “implicit promise those conditions confer,” and the individual’s justifiable reliance on those conditions create the protected liberty interest. *In re Bush*, 164 Wash 2d 697, 703–04, 193 P3d 103 (2008) (holding that reasoning in *Morrissey* “applies equally to conditional commutations.”).

After receiving his commutation, Respondent, like any other parolee, could once again participate in gainful employment, renew meaningful bonds with friends and family, and freely engage with “other enduring attachments of normal life.” *Morrissey*, 408 US at 482. And having completed his jail sentence for Case No. 24CR03038 and the associated Board-approved sanction, Respondent had no expectation that he would once again lose his liberty. By

revoking Respondent's commutation, the state, through Governor Kotek, deprived Respondent of this constitutionally protected liberty right.

**2. Plaintiff was entitled to due process protections under *Morrissey* before he could be deprived of that constitutionally protected liberty interest.**

Because Respondent had a protected liberty interest, he was entitled—at minimum—to notice and an opportunity to be heard before the deprivation of that right. *See Noble v. Bd. of Parole*, 327 Or 485, 496, 964 P2d 990 (1998) ("When an individual's interests in life, liberty, or property are at stake, due process requires, at a minimum, that the person receive notice and an opportunity to be heard."); *Haygood v. Younger*, 769 F2d 1350, 1355 (9th Cir 1985) ("When [a] state * * * creates a liberty interest [it] must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated."); *Fleenor*, 116 F2d at 986 ("Due process is satisfied if there is reasonable opportunity extended to [petitioner] to explain away the accusation that he has violated the conditions upon which his pardon was granted.").

Recognizing the similarities between commutation revocations and parole revocations with regard to the liberty interests at stake, courts have applied the parole revocation standards set forth in *Morrissey* to commutation revocations. *See, e.g.*, *Bush*, 164 Wash 2d at 705-06; *Pope*, 521 F2d at 404–05.

In *Morrissey*, the U.S. Supreme Court set forth the process due before the state may revoke parole. 408 US at 488–89. Consistent with that process, parolees facing revocation are entitled to a revocation hearing to determine (1) whether a violation has occurred, and (2) if so, whether revocation is warranted.[4] *Id.* Thus, in addition to contesting any violations alleged, parolees facing revocation may present evidence to demonstrate "that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* For that reason, automatic revocation of parole based upon a conviction for a new crime has been held to violate due process. *See, e.g.*, *Heinz v. McNutt*, 582 F2d 1190 (9th Cir 1978); *see also United States v. Segal*, 549 F2d 1293 (9th Cir 1977), *cert den*, 431 US 919, 97 S Ct 2187, 53 L Ed 2d 231 (1977) (Even when supervision violations are uncontested, "[t]he judge must still decide the more difficult issue whether the violations warrant revocation of probation. This

---

[4] The hearing must occur "within a reasonable time after [being] taken into custody." *Id.* Other attendant rights include,

> "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

*Id.*

involves predictive and discretionary considerations in addition to factual inquiries. Moreover, the probationer is allowed to present evidence in mitigation of the violations. Thus, admissions of probation violations, unlike guilty pleas, do not automatically trigger sentencing." (citing *Morrissey*, 408 US at 480); *United States v. Diaz-Burgos*, 601 F2d 983 (9th Cir 1979) ("It is not enough that a violation of probation conditions has been admitted or established at a hearing. A further and equally important step is necessary to determine whether such a violation warrants revocation[.]"); *Gagnon v. Scarpelli*, 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973) (probationer's admission to committing serious crime did not obviate due process requirements before probation could be revoked).

There is no meaningful distinction between the liberty at stake for an individual who had been granted parole and one who has been granted a conditional commutation. This Court should hold that the due process protections laid out in *Morrissey* apply to commutation revocations.[5]

---

[5] Even before *Morrissey*, courts recognized that due process protections apply in the context of clemency revocations. In *Fleenor*, the court considered an issue nearly identical to the one Plaintiff raises. 116 F2d at 983. There, the Governor granted the petitioner a conditional pardon. *Id.* Four years later, without providing notice or an opportunity to be heard, the Governor revoked the petitioner's pardon for violating the conditions. *Id.* at 983–84. The petitioner challenged the Governor's decision as violating due process. *Id.* at 984. The court found in favor of the petitioner, holding that the petitioner should have been permitted a hearing to challenge "by unequivocal allegations that the petitioner has complied with the conditions of the grant." *Id.* at 986. "Due process is satisfied if there is a reasonable opportunity extended to

### 3. Governor Kotek did not provide Respondent with any process before revoking his commutation.

The Governor did not provide Respondent with *any* process before revoking his commutation. Under *Morrissey*, the hearing mandated in Respondent's case would have required the factfinder to determine whether he violated a condition of his commutation *and*, if so, whether revocation was warranted. *See* 408 US at 488–89. Respondent did not receive any hearing, nor did he receive any opportunity to address either of those *Morrissey* requirements. He likewise did not receive any post-deprivation process, including notice. Under any standard, Respondent's due process rights were violated. Even assuming that a factfinder could have found that Respondent violated the terms of his commutation, due process still required that Plaintiff be given the opportunity to demonstrate that revocation was not warranted. He was not.

---

[petitioner] to explain away accusation that he has violated the conditions upon which his pardon was granted." *Id.*

Courts have also extended the procedural protections afforded under *Morrissey* to individuals under more restrictive forms of post-incarceration supervision. *See Young v. Harper*, 520 US 143, 117 S Ct 1148, 137 L Ed 2d 270 (1997) (*Morrissey* procedural protections apply to those under "preparole conditional supervision program"); *see also Bristol v. Peters*, No. 3:17-CV-00788-SB, 2018 WL 6183274, at *6 (D Or Nov 27, 2018) (holding Oregon's short-term transitional leave conferred a protected liberty interest requiring *Morrissey*'s procedural protections).

### 4. The due process violation was not harmless.

Respondent was prejudiced by the denial of his due process rights because he had no opportunity to be heard and to demonstrate that the revocation was not warranted.

"[V]iolations of federal constitutional rights must be analyzed under the federal harmless error test." *State v. Cook*, 340 Or 530, 544, 135 P3d 260 (2006); *see also State v. Brumbach*, 273 Or App 552, 564, 359 P3d 490 (2015) ("Federal harmless error analysis applies to due process violations."); *In re Bush*, 164 Wash 2d at 705 (stating that "the contours of required procedural due process for commutation revocation are defined in *Morrissey*" but denying relief because petitioner failed to make showing of actual or substantial prejudice). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 828, 17 L Ed 2d 705 (1967).

Contrary to what Appellants contend, Respondent was prejudiced by the denial of due process. Had Respondent received adequate process prior to Governor Kotek's revocation decision, he would have demonstrated that revocation was not warranted for the following reasons:

- Respondent was not on notice that his commutation was conditional. No one informed him of the conditional nature of the commutation, either before or after his release from ODOC

custody. Indeed, Respondent's supervising officer was also unaware that the commutation was conditional.

- Enforcement of the revocation clause would necessarily result in the unlawful increase in punishment explained above.
- The trial court and the local district attorney had agreed that a downward dispositional departure to 30 days in jail and three years of probation was an appropriate resolution for the same conduct that (presumably) gave rise to the Governor's revocation order.
- Respondent's supervising officer had recommended—and the Board had approved—a 44-day jail sanction for the offending conduct.
- Respondent had completed the Board-approved sanction for the same underlying conduct.
- Other than Respondent's failure to register, he has obeyed all state and federal laws since his release in 2021.

*Cf. Morrissey*, 408 US at 488–89.

The Governor's failure to provide Respondent with an opportunity to establish that revocation was not warranted cannot be said to be "harmless beyond a reasonable doubt," *see Chapman* 386 US 18, 24, nor can it be said that Respondent has failed to establish a prima facie case of prejudice, *see Bush*, 164 Wash at 706. The trial court properly granted the petition for habeas relief on due process grounds.

**C. The revocation was contrary to the post-prison supervision framework incorporated into the commutation.**

Even if the state and federal constitutions allowed the Governor to increase Respondent's sentence and to revoke his commutation without due process, the commutation itself barred the Governor from revoking Respondent's commutation. Specifically, the Governor was without authority to revoke Plaintiff's commutation after he completed a Board-imposed

revocation for the offending conduct, and when the effect was that Plaintiff would "serve out the sentence that was remaining at the time the Commutation was granted" without any allowance for credit for the time he served as a result of that Board-imposed revocation.

In *Brown v. Kotek*, the Supreme Court concluded that when "the Governor chose to incorporate the statutory and regulatory [post-prison supervision] framework" into a commutation order and agreement, she limited the time in which she could revoke the commutation. 372 Or at 267–69 ("[T]he Governor limited her own ability, and the ability of any future holder of that office, to revoke the commutation to the period of time before plaintiff's PPS had ended and her sentence had expired."). As in *Brown*, Governor Brown incorporated the statutory and regulatory post-prison supervision framework into Respondent's commutation order. *See* ER-9. Thus, Governor Brown similarly limited her ability, and the ability of any future holder of her office, to revoke a commutation other than as allowed under the post-prison supervision framework.

**1. The Governor lacked authority to revoke after Respondent completed a Board-imposed revocation for the same offending conduct.**

The self-limiting nature of the commutation barred the Governor from revoking after completion of a Board-imposed revocation for the same

offending conduct.[6] In response to Plaintiff's violations of post-prison supervision, the Board recommended that the Governor revoke Plaintiff's commutation. ER-16. The Governor did not immediately do so. It was not until March 12, 2024, after Respondent had completed the 44-day jail sanction the Board had imposed, that the Governor chose to revoke Plaintiff's commutation. ER-17. Through that act, Respondent was effectively punished a second time by the same branch of government for the same conduct. This is unlawful and impermissible.

After a hearing, or waiver, the Board may order an administrative sanction of up to 90 days in jail. OAR 255-075-0067(3). "If an administrative sanction is not sufficient to address the violation or to protect the public, the [Board] may revoke supervision for a period(s) as set out in OAR 255-075-0079, [*i.e.*, 90 days for technical violations and 180 days for conduct constituting a crime] or deny rerelease for offenders on parole." OAR 255-075-0067(6). The conditional language in OAR 255-075-0067(6) makes clear that the Board may revoke supervision or deny re-release only "if" a sanction is insufficient; that is, the Board does not have the authority to both impose a

---

[6] Governor Kotek's revocation order does not state the factual basis for the revocation. However, the Board's email addressing its referral f Respondent's case to the Governor's Office suggests that it was based on the same conduct that the gave rise to the Board's sanction. *See* ER-16.

sanction and order revocation for the same violation. Nor do the rules provide for multiple sanctions or multiple revocations for the same violation.

By adopting the statutory and regulatory post-prison supervision framework into her commutation order, Governor Brown limited the circumstances under which a conditional commutation could be revoked. Thus, upon a violation of post-prison supervision, the Board could impose an administrative sanction *or* revoke supervision for up to 180 days *or* the Governor could revoke the commutation. But only one of those could occur.[7] Because the Governor was confined to one of these "two choices," once the Board imposed the revocation and Plaintiff was released from it, the option to revoke longer existed.

---

[7] This position is consistent with Appellants' statements in other revocation cases:

> "When plaintiff committed a new crime, under the terms of the commutation the Governor had two choices. First, because the commutation 'does not relieve [plaintiff] of post-prison supervision,' the Governor could leave the commutation in place and allow the Board to impose a post-prison supervision sanction—in other words, an incarceration sanction of up to 180 days. Second, because the crime was a violation of state law and so a violation of the conditions of the commutation, the Governor could revoke it[.]"

Defendants' Resp at 8–9, *Beck v. Kotek* (S071274) (internal citation omitted).

### 2. If the Governor could revoke after Respondent had completed the Board-imposed revocation, Respondent is entitled to credit for the days served.

Under the post-prison supervision framework, "[a]n offender ordered to serve a term of incarceration in jail as a sanction for a post-prison supervision violation shall receive credit for time served in a state or local correctional facility on the supervisory violation prior to the Board's imposition of a term of incarceration in jail." OAR 213-011-0004. It follows, then, that a person ordered to serve a term of imprisonment by the Board must receive credit for time served on the violation prior to the Governor's imposition of a prison term.

## CONCLUSION

For the foregoing reasons, Respondent respectfully urges the Court to affirm the trial court's judgment.

DATED this 3rd day of November, 2025.

Respectfully submitted,

By: s/ Nadia H. Dahab
**Nadia H. Dahab**, OSB No. 125630
101 SW Main Street, Ste. 910
Portland, OR 97204
Tel: (503) 228-6474
nadia@sugermandahab.com

**Attorneys for Plaintiff-Respondent**

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word-count limitation in ORAP 5.05, which word count is 6501.

I certify that the size of the type in this brief is not smaller than 14-point for both the text of the brief and footnotes.

DATED this 3rd day of November, 2025.

SUGERMAN DAHAB

By: s/Nadia H. Dahab

**Nadia H. Dahab**, OSB No. 125630
101 SW Main Street, Ste. 910
Portland, OR 97204
Tel: (503) 228-6474
nadia@sugermandahab.com

**Attorneys for Plaintiff-Respondent**